# BLANKENSHIP DEP.

```
           IN THE UNITED STATES DISTRICT COURT
              DISTRICT OF SOUTH CAROLINA
                    AIKEN DIVISION
            CASE NO.: 1:24-cv-02612-SAL-PJG
```

Alisha Johnson,                )
                               )
        Plaintiff,           )
                               )
v.                             )
                               )
Savannah River Nuclear         )
Solutions,                     )
                               )
        Defendant.           )
_____)

DEPOSITION OF

Tamara Blankenship

\*\*\*\*\*\*\*\*\*\*\*

Thursday, April 24, 2025

10:17 a.m. - 1:18 p.m.

The deposition of Tamara Blankenship was taken before Kimberly C. Young, a notary public in and for the State of South Carolina, commencing on Thursday, April 24, 2025, at the offices of Cromer Babb & Porter, 1418 Laurel Street, Columbia, South Carolina, pursuant to Notice of Deposition and/or agreement of counsel.

4/24/2025                          TAMARA BLANKENSHIP

```
 1                      APPEARANCES

 2  Attorneys for the Plaintiff:

 3     Jay Babb, Esquire
       Jill Lesley, Esquire
 4     CROMER BABB PORTER & HICKS
       1418 Laurel Street, Suite A
 5     Columbia, South Carolina 29201
       Jay@cromerbabb.com
 6     Jill@cromerbabb.com

 7
    Attorney for the Defendant:
 8
       Phillips Lancaster McWilliams, Esquire
 9     Fisher & Phillips, LLP
       1320 Main Street
10     Suite 750
       Columbia, SC 29211
11     pmcwilliams@fisherphillips.com

12

13  Also Present:

14     Alisha Johnson, Plaintiff
       Rebecca Biasiny, Associate General Counsel, SRNS
15     Angela Baxley, Paralegal, SRNS

16                        INDEX

17  Stipulations . . . . . . . . . . . . . . . . . . . . 4

18  Examination by Mr. Babb . . . . . . . . . . . . . . . 4

19  Examination by Mr. McWilliams . . . . . . . . . . . 75

20  Signature Sheet . . . . . . . . . . . . . . . . . . 78

21  Certificate . . . . . . . . . . . . . . . . . . . . 79

22

23

24

25
```

4/24/2025                    TAMARA BLANKENSHIP

```
 1                         EXHIBITS
 2   Plaintiff's Exhibit Number 1  . . . . . . . . . . .  40
 3     (Email Chain)
 4   Plaintiff's Exhibit Number 2  . . . . . . . . . . .  49
 5     (Email Chain)
 6   Plaintiff's Exhibit Number 3  . . . . . . . . . . .  56
 7     (Email Chain)
 8   Plaintiff's Exhibit Number 4  . . . . . . . . . . .  59
 9     (Review Board Documents)
10   Plaintiff's Exhibit Number 5  . . . . . . . . . . .  67
11     (Policy)
12   Plaintiff's Exhibit Number 6  . . . . . . . . . . .  71
13     (Notes from DRB meeting)
14   Plaintiff's Exhibit Number 7  . . . . . . . . . . .  71
15     (Termination Notice)
16
17
18
19
20
21
22
23
24
25
```

| | | |
|---|---|---|
| 1 | Q. | Did you ever review any performance reviews of |
| 2 | | Ms. Johnson? |
| 3 | A. | No. |
| 4 | Q. | Prior to the termination, were you involved in |
| 5 | | any corrective actions or counselings against |
| 6 | | Ms. Johnson? |
| 7 | A. | Yes. |
| 8 | Q. | And how many? |
| 9 | A. | Two. |
| 10 | Q. | Do you recall what those were? |
| 11 | A. | The first was the altercation between Ms. |
| 12 | | Johnson and Terry Stoudemire. |
| 13 | Q. | Okay.  And what was the second? |
| 14 | A. | The second was at the termination. |
| 15 | Q. | Were you involved in any corrective or |
| 16 | | disciplinary action regarding the 2021 |
| 17 | | investigation of use of the computer or |
| 18 | | government resources? |
| 19 | A. | No. |
| 20 | Q. | Who made -- who made the decision to discipline |
| 21 | | Ms. Johnson regarding the Terry Stoudemire |
| 22 | | incident? |
| 23 | A. | There was conversation with management.  They |
| 24 | | recommended and I confirmed. |
| 25 | Q. | What position did Ms. Johnson hold? |

1        I'll just be referring that as 77.  Do you
2        understand?
3   A.   Understood.
4   Q.   Okay.  And that would be similar to some of the
5        other documents we may look at today as other
6        exhibits.  The first page of Exhibit 1 is an
7        email chain.  Have you ever seen this document
8        before?
9   A.   Yes.
10  Q.   And there's an email from you to William Carter
11       or Bill Carter.  Who is Bill Carter?
12  A.   Investigator for SRNS.
13  Q.   And at this point, in August 24th, 2023, why
14       were you sending this to Mr. Carter?
15  A.   He had requested information.
16  Q.   Okay.  The second page of this document has that
17       same email that was part of that chain we looked
18       at on the first page.  This one references some
19       attachments.  It says, "I've included the
20       contacts for the November '22 incident involving
21       Alisha and Terry."  Did I read that correctly?
22  A.   Yes.
23  Q.   Okay.  And what are contacts?
24  A.   Contacts, we -- there are two forms of contacts.
25       One is an informative contact, which is just

```
 1              formal documentation for information.  The
 2              second is a corrective contact, which starts the
 3              disciplinary process.
 4        Q.    Are they -- are they different forms?
 5        A.    Yes.
 6        Q.    The attachments that are listed on the second
 7              page of this exhibit are Bates number 78.  Are
 8              Stoudemire contact, 112922 PDF; Johnson contact,
 9              112822 PDF; and timeline.msg, which appears to
10              be an email message.  Then there are three pages
11              at the end of this exhibit.  Do those appear to
12              be the attachments to this email?
13        A.    Yes.
14        Q.    Okay.  Let's look at the page marked as Bates
15              Number 80.  This is -- would you call this an
16              informative contact?
17        A.    That is correct.
18        Q.    And this was issued to Ms. Johnson?
19        A.    Correct.
20        Q.    And the signature at the bottom, Ms. Johnson has
21              signed, but also Mr. Youngblood?
22        A.    Correct.
23        Q.    The Bates Number 81, that's an informative
24              contact as well?
25        A.    That is correct.
```

```
 1    A.   Not at that time.
 2    Q.   Okay.  So how was -- how did that decision come
 3         to be?
 4    A.   After the call, a DRB is convened.  From there,
 5         the board will consist of EEO, security, an
 6         independent manager, the investigator will be
 7         present, HR will be present, and management will
 8         be present.  And they go and state facts,
 9         findings.  Ms. Johnson will have an opportunity
10         to speak and an opportunity to bring any
11         character witnesses that she may choose.
12    Q.   At the time of the DRB, or the disciplinary
13         panel meeting, was there a recommendation at
14         termination -- of termination, or would that
15         come at the conclusion of the meeting?
16    A.   That would come at the conclusion of the
17         meeting.  Not everyone sits in on that.  There's
18         only three voting members or panel, the folks on
19         the panel.  Everyone else is dismissed for that.
20    Q.   What -- well, not every investigation leads to a
21         DRB?
22    A.   Correct.
23    Q.   So what type of, I guess, conduct or offenses
24         trigger the need to have a DRB?
25    A.   For this particular one, it was because she had
```

| | |
|---|---|
| From: | Tamara Blankenship |
| To: | William Carter |
| Subject: | RE: Investigation Documents |
| Date: | Thursday, August 24, 2023 12:31:02 PM |

Ok will do.

**From:** William Carter <William.Carter@srs.gov>
**Sent:** Thursday, August 24, 2023 12:30 PM
**To:** Tamara Blankenship <Tamara.Blankenship@srs.gov>
**Subject:** RE: Investigation Documents

Thank you! I think the only other thing that I need to ask you for is something showing the promotion process of Overton. She alleged in her charge that this was also discrimination against her, however, I have been told she did not apply for that position. Having the posting and list of candidates showing who was selected would help me dispel that aspect of this.

**From:** Tamara Blankenship <Tamara.Blankenship@srs.gov>
**Sent:** Thursday, August 24, 2023 10:54 AM
**To:** William Carter <William.Carter@srs.gov>
**Subject:** Investigation Documents

OUO
Hi Bill,
I have included the contacts for the Nov 22 incident involving Alisha and Terry. I have witness/management statements as well if needed for supporting documentation. I have included the timeline given to me by management for the meeting held in October. The Lead Planner and SPOC are not official positions but rather an opportunity for development within the group. The outcome of the meeting was management will allow all Work Window Managers to rotate from execution to SPOC, to lead planner, back to execution, rotation to adjust each month. William Brent Owenby was promoted to WWM SGL 34 on July 1, 2022 and resigned from the company on Feb. 9, 2023. Alisha was a WWM SGL 34.

**\*\*For Technical Services HR Support, please include Willie Larkin on all email traffic\*\***

## Tamara Blankenship
**Savannah River Nuclear Solutions**
HR Business Partner | Technical Services
Phone: 803-761-4410



01AU000077
24064.0083

| | |
|---|---|
| **From:** | Tamara Blankenship |
| **To:** | William Carter |
| **Subject:** | Investigation Documents |
| **Date:** | Thursday, August 24, 2023 10:54:03 AM |
| **Attachments:** | Stoudemire Contact 11.29.22.pdf |
| | Johnson Contact 11.28.22.pdf |
| | Time Line.msg |

OUO

Hi Bill,

I have included the contacts for the Nov 22 incident involving Alisha and Terry. I have witness/management statements as well if needed for supporting documentation. I have included the timeline given to me by management for the meeting held in October. The Lead Planner and SPOC are not official positions but rather an opportunity for development within the group. The outcome of the meeting was management will allow all Work Window Managers to rotate from execution to SPOC, to lead planner, back to execution, rotation to adjust each month. William Brent Owenby was promoted to WWM SGL 34 on July 1, 2022 and resigned from the company on Feb. 9, 2023. Alisha was a WWM SGL 34.

**\*\*For Technical Services HR Support, please include Willie Larkin on all email traffic\*\***

# Tamara Blankenship
## Savannah River Nuclear Solutions
HR Business Partner | Technical Services
Phone: 803-761-4410

| From: | Frederick Youngblood |
|---|---|
| To: | Edward Bodie; Tamara Blankenship |
| Subject: | Time Line |
| Date: | Monday, November 14, 2022 1:26:17 PM |

FYI

6/2021 Owenby was asked to backfill Lead Planner position due to personnel moves (qualified planner)

7/1/2022 Owenby promoted to WWM and ask to continue lead planner Function due to organizational needs

8/8/2022 Ms. Johnson expressed concern over about her not being asked to fill the SPOC or lead planner position. To Porter and then E. Bodie.

8/22/2022 Bodie met with Porter and Owenby and discussed the situation. Mr. Owenby was instructed he would complete his WWM and training and Mr. Youngblood was counseled on management practices and instructed to place all WWMs back in rotation as business needs will allow. Owenby following facility priority planning issues at Porter's request.

10/3/2022 WWM rotation adjusted to allow all WWM's to rotate from execution to SPOC, to lead planner, back to execution. Rotation to adjust each month. SPOC and Lead Planner Roles will be a monthly rotation.

10/20/2022 Ms. Johnson requested a meeting with Bodie where she asked if it were possible to her to be moved to another position. Although not unhappy, she felt that she might feel better in another position due to the above mentioned situation. Bodie also asked if there were any issues in the work place with her, Porter or any other peers and she stated none. Bodie stated he would take it a look but also asked if he could not move her, how would she feel. Ms. Johnson stated she would continue to perform her duties and adjust as she needed to perform her job. As a follow up Bodie spoke with Porter and at this time there were no issues with Ms. Johnson or himself.

10/31/2022 WWM rotation adjusted for all WWM's to be working execution, SPOC and Lead Planner roles shelved (not being filled).

Week of 11/7/2023: Bodie pulsed groups that had potential to groups for a potential swap and did not find any volunteers. There was actually only one real consideration as all of the other teams have new WWMs and the others are in critical positions.


**Porter Youngblood**
**H Area WMC MANAGER**
**704-H RM B-20**
**208-0927**
**803-646-5322**

OSR 5-317 (Rev. 07-10-2019)
Page 1 of 1

Proc. Ref. 5B

| Routing | Initial | Date |
|---|---|---|
| Employees Field File | | |
| Business Unit HR | | |
| Personnel Coordinator | | |
| HR Records, 703-47A | | |

## Personal and Confidential
## M&O Employee Information Record

NOTE OSR 5-317 is to be used by M&O Employees and OSR 5-317A is to be used by LW Employees.

**Instructions**
- Section 1  If Employee is on loan, manager should consult with home department.
- Section 2  Indicate type of record.
- Section 3  Manager will give a brief summary of the discussion.
- Section 4  Manager will outline specific mutually agreed upon goals and should make every effort to assist the employee in meeting these goals, if applicable.
- Section 5  Employee and manager should sign and date the completed form.
- See instructions in the top right-hand corner of this form for routing. Reference Manual 5B, Human Resources, for distribution of copies.

### Section 1 - Employee Information

| Name | User ID | Employee Type | | Job Title | |
|---|---|---|---|---|---|
| Alisha Johnson | A2765 | ☉ Exempt  ○ SOP  ○ Nonexempt | | Work Window Manager | |
| Business Unit | Org Code | Loaned Org Code | | ASD | PSD |
| Maintenance WPC & Site Services | C2321A | | | 08/08/1998 | 08/08/1998 |

### Section 2 - Type of Record and Routing

| ☐ Commendatory | ☒ Informative | ☐ Qualifying or Trying Appraisal | ☐ Discontinuance |
|---|---|---|---|
| • HR Records<br>• Employee's Field File | • Business Unit HR<br>• Personnel Coordinator<br>• Employee's Field File | • Personnel Coordinator<br>• HR Records<br>• Employee's Field File | • Business<br>• Personnel Coordinator<br>• HR Records |

○ Pay Approved    ○ Pay Denied

Days/Months _____

### Section 3 - Summary

You are being given this informative as a result of a verbal altercation with a fellow employee on 11/22/22 in H-Area. This altercation escalated to a point where voices were raised that began to disturb the surrounding workers. This altercation also involved a narrative that could be interpreted as discriminatory and racial. You should ensure that your actions and discussions in the work place remain professional and respectful. If you find yourself in a situation where you feel someone else is not treating you respectfully you should immediately report the circumstances to your supervision. You understand that any future activity of this nature could result in additional disciplinary actions.

### Section 4 - Recommend Development Actions

1. Review the Rules of Conduct, Human Resources Manual 5B, Procedure 1-4, Section 5.1
2. Review the Rules of Conduct, Human Resources Manual 5B, Procedure 1-4, section 5.13.2
3. Review the Work Place Violence Policy Manual 1-01, Procedure 2.19, • Actions disrupting normal work activities, such as yelling, wild gestures, or demands for an immediate answer, • Telling jokes or making offensive comments regarding violence or violent events, • Harassment, surveillance, or stalking.

### Section 5 - Employee Comments (Optional)

*I understand the potential perception and the significance of this situation and the importance of maintaining a good work environment.*

### Section 6 - M&O Signatures

| M&O Employee (Print) Alisha Johnson | Signature [signed] | Date 11/28/22 |
|---|---|---|
| M&O Manger (Print) Frederick P. Youngblood | Signature [signed] | Date 11/28/22 |

**OFFICIAL USE ONLY**
May be exempt from public release under the Freedom of Information Act (5 U.S.C. 552), exemption number and category 6 - Personal Privacy. Department of Energy review required before public release.

Name/Org: _____    Date: _____    Guidance (if applicable): _____

**OFFICIAL USE ONLY**
*(When Filled In)*

OSR 5-317 (Rev. 07-10-2019)
Page 1 of 1

Proc. Ref. 5B

| Routing | Initial | Date |
|---|---|---|
| Employees Field File | | |
| Business Unit HR | | |
| Personnel Coordinator | | |
| HR Records, 703-47A | | |

## Personal and Confidential
## M&O Employee Information Record

NOTE OSR 5-317 is to be used by M&O Employees and OSR 5-317A is to be used by LW Employees.

**Instructions**
Section 1   If Employee is on loan, manager should consult with home department.
Section 2   Indicate type of record.
Section 3   Manager will give a brief summary of the discussion.
Section 4   Manager will outline specific mutually agreed upon goals and should make every effort to assist the employee in meeting these goals, if applicable.
Section 5   Employee and manager should sign and date the completed form.
See instructions in the top right-hand corner of this form for routing. Reference Manual 5B, Human Resources, for distribution of copies.

### Section 1 - Employee Information

| Name | User ID | Employee Type | | Job Title | |
|---|---|---|---|---|---|
| Terry Stoudemire | W6461 | ○ Exempt  ⦿ SOP  ○ Nonexempt | | H-Area Senior Planner | |
| Business Unit | Org Code | Loaned Org Code | | ASD | PSD |
| Maintenance WPC & Site Services | C2321AB | | | 02/25/1985 | 02/25/1985 |

### Section 2 - Type of Record and Routing

| ☐ Commendatory | ☒ Informative | ☐ Qualifying or Trying Appraisal | ☐ Discontinuance |
|---|---|---|---|
| • HR Records | • Business Unit HR | • Personnel Coordinator | • Business |
| • Employee's Field File | • Personnel Coordinator | • HR Records | • Personnel Coordinator |
| | • Employee's Field File | • Employee's Field File | • HR Records |

○ Pay Approved   ○ Pay Denied

Days/Months _____

### Section 3 - Summary

You are being given this informative as a result of a verbal altercation with a fellow employee on 11/22/22 in H-Area. This altercation escalated to a point where voices were raised that began to disturb the surrounding workers. This altercation also involved a narrative that could be interpreted as discriminatory and racial. You understand that the continued pursuit of the conversation shows an aggressive behavior, when asked to stop, you understand the need to cease the conversation and remove yourself from the area. You should ensure that your actions and discussions in the work place remain professional and respectful. If you find yourself in a situation where you feel aggressive behavior and disrespect is being displayed, you should immediately remove yourself from the situation and report the circumstances to your supervision. You understand that any future activity of this nature could result in additional disciplinary actions.

### Section 4 - Recommend Development Actions

1. Review the Rules of Conduct, Human Resources Manual 5B, Procedure 1-4, Section 5.1
2. Review the Rules of Conduct, Human Resources Manual 5B, Procedure 1-4, section 5.13.2
3. Review the Work Place Violence Policy Manual 1-01, Procedure 2.19, • Actions disrupting normal work activities, such as yelling, wild gestures, or demands for an immediate answer, • Telling jokes or making offensive comments regarding violence or violent events, • Harassment, surveillance, or stalking.

### Section 5 - Employee Comments (Optional)

### Section 6 - M&O Signatures

| M&O Employee (Print)  Terry L Stoudemire | Signature  *[signed]* | Date 11/29/22 |
|---|---|---|
| M&O Manager (Print)  Frederick P. Youngblood | Signature  *[signed] F.P. Ylee* | Date 11/29/2022 |

**OFFICIAL USE ONLY**
May be exempt from public release under the Freedom of Information Act (5 U.S.C. 552),
exemption number and category 6 - Personal Privacy. Department of Energy review required before public release.

Name/Org: _____   Date: _____   Guidance (if applicable): _____

**OFFICIAL USE ONLY**
*(When Filled In)*