# CARTER DECLARATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| Alisha Johnson, | ) | Civil Action No. 1:24-cv-02612-JDA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DECLARATION OF** |
| | ) | **WILLIAM F. CARTER** |
| Savannah River Nuclear Solutions, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Under penalty of perjury, William F. Carter, being duly sworn, does hereby state that:

1. I am over the age of eighteen (18) and am competent to testify to the matters herein. Unless otherwise stated, the facts contained herein are known to me personally, and the statements herein incorporated are true and correct.

2. I am currently employed with Savannah River Nuclear Solutions, LLC ("SRNS") as an investigator in the internal investigations section of the Office of General Counsel and have worked in this position since October 1, 2018.

3. These statements are based on my personal knowledge or my review of business records SRNS maintained in the ordinary course of business.

4. In 2021 and 2023, I conducted two separate investigations into the use by Alisha Johnson ("Johnson") of government resources for personal business purposes. My investigations included reviewing forensic examinations of Johnson's computer and other equipment as well as conducting witness interviews. I interviewed Johnson in relation to both investigations.

5. A true and correct copy of my May 20, 2021 summary of investigation is attached at Attachment A. Based on the evidence reviewed and interviews conducted, I determined that Johnson used government resources to facilitate the operation of her outside, personal business.

6. A true and correct copy of my February 13, 2023 summary of investigation is attached at Attachment B. Based on the evidence reviewed and interviews conducted, I determined that Johnson used government resources to facilitate the operation of her outside, personal business.

7. I began the 2023 investigation after receiving a call from Alison Maurer ("Maurer"), Special Agent, Office of the Inspector General ("OIG"). During the phone call, Maurer advised me that Johnson was the subject of an OIG Criminal Investigation. She later confirmed that the OIG investigation related to the use of her work computer.

8. The Office of the Inspector General is a separate entity from SRNS.

9. During my 2023 investigation, Johnson made certain representations to me regarding visiting the websites of Clover and the S.C. Department of Revenue. I personally examined the forensic evidence showing Johnson's Internet activity related to these sites. Based on this evidence, I concluded that Johnson had made false statements to me in the course of my investigation.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 04, 2025.

_William F. Carter_ (signature)

William F. Carter

# Attachment A

Savannah River Nuclear Solutions
Office of General Counsel
**Internal Investigations**
*Investigative Summary*

May 20, 2021     OGC–INV-2021-080

To:     J.T. Curtis, 703-47A

From:   W.F. Carter, 703-47A

## SUMMARY OF INVESTIGATION: CASE 2021FW4-040, MISUSE OF GOVERNMENT RESOURCES (U)

### Predication

J.T. Curtis, General Counsel, Office of General Counsel predicated this investigation on May 06, 2021.

### Concern

On April 22, 2021, Josh Wright reported that user ID A2765, assigned to Alisha Johnson, Principal Engineering and Technical Support Specialist, HB Line Team WPMC, was observed, through routine monitoring of systems, to potentially use government resources to facilitate the operation of a personal business. Wright reported that Johnson appeared to print several documents related to Bea's Place LLC, which is a bar and grill establishment for which Johnson is the Registered Agent according to business filings maintained by the State of South Carolina. The documents printed consisted of employee reports, shift calendars, and inventory reports. This concern was forwarded to the Office of General Counsel, Internal Investigations Section, for further review.

### Purpose of Investigation

To determine if Alisha Johnson used government resources to facilitate the operation of her outside, personal business.

### Individuals Contacted

- Josh Wright, Computer Security Engineer, Cyber Security
- Porter Youngblood, Site Services Group Manager, H Canyon WPC
- Alisha Johnson, Principle Engineering and Tech Support Spec, HB Line Team WPMC

01AF000001
24064.0083

Page 2 of 5
05/20/2021

## Documents Reviewed

- Cyber Security Forensic Examination Report, ECSO-0421-007

## Details of Investigation

On April 26, 2021, this investigator requested that Cyber Security conduct a detailed examination of the computer user profile of Alisha Johnson, Principal Engineering and Technical Support Specialist, HB Line Team, in an attempt to determine the extent of use for personal business purposes. Josh Wright, Computer Security Engineer, Cyber Security, submitted a completed Forensic Examination Report to this investigator on May 17, 2021.

This investigator obtained all of the Annual Conflict of Interest Questionnaires submitted, by Johnson, to the SRNS Ethics Office from 2018 through 2021. Four questionnaires were examined in total and Johnson did not disclose any outside business activity on any of the questionnaires she submitted.

Wright's report indicates that he located documents related to five outside, personal businesses, which Johnson may have had a role in, stored on her government issued computer. Wright listed the business names in his report as Beas's Place, Deuce's Bar and Lounge, Barnes Mobile Home Park, Mayhem Productions, and MJohnson Enterprises. Wright located a total of 413 documents related to these businesses on Johnson's computer, dating back as early as 2015. The documents located on Johnson's computer, according to Wright's report, included income and inventory tracking spreadsheets, employee wage reports, sales reports, facility rental agreements, and bar menus. On one of the sales documents from Johnson's computer, Wright reported that he observed "Alisha Johnson US Govt iPhone" listed as a registered device with which to process credit card payments.

The report also indicates that Johnson used a government owned printer to produce printed copies of documents stored on her computer. Wright reported that Johnson has printed over 200 documents related to her businesses since December 2020, and 141 since January 2021. The documents were mostly associated with Bea's Place and Barnes Mobile Home Park and include profit and loss statements, webpages from credit card and point of sale processing companies, restaurant menus, shift and employee reports, inventory reports, and business contracts.

Johnson also used the internet on her government issued computer to further the operation of her business. She conducted searches related to job descriptions for bar staff, researched employment contracts, and shopped for supplies for a bar. Johnson, according to Wright's report, frequently visited a specific site, Clover.com, routinely spending between five and 30 minutes on the site. He reported that Johnson would typically print reports for Bea's Place just after visiting Clover.com. Overall, Wright described Johnson's internet usage time as "relatively low" with average daily use of less than 45 minutes, which includes legitimate business use as well as personal or personal business use.

01AF000002
24064.0083

Page 3 of 5
05/20/2021

On May 18, 2021, this investigator conducted an interview with Porter Youngblood, Site Services Group Manager, H Canyon WPC. Youngblood stated he is the direct manager for Johnson. He advised he has not observed any performance issues with Johnson and explained that she does her work well and in a timely manner. He stated that he is aware she has a personal business. He described the business as a bar and stated he has heard her talk about it with co-workers. In addition, according to Youngblood, Johnson has called into management in the past advising she would be late due to an alarm going off at the business that had to be checked out. Youngblood stated the business activity has not appeared to affect Johnson's job performance with SRNS.

In an interview on May 18, 2021, Johnson stated she is issued a government owned desktop computer and government owned iPhone. She advised she has access to a network printer and to a government owned printer that is issued to her and kept in her office. Johnson explained that she has been working onsite full-time, not teleworking, and works in her office as well as "moving around" working with different work groups within her role as a Work Planning Coordinator (WPC). She stated her team rotates duties weekly and they are each assigned different responsibilities for each week on that rotation. This results in her working in her office for a significant amount of time on some weeks and then being away from her office for most of her work time on other weeks.

Johnson identified Bea's Place as "a bar" that she runs. She clarified that she owns and operates Bea's Place in Aiken, SC. She stated she has owned and operated Bea's Place since June 2018, however, prior to that she advised she was involved in the operation of "Deuce's," which was a similar business at the same location, from 2013 through 2017. She explained that she became the full owner of the establishment in June 2018 and changed the name to Bea's Place to honor her mother-in-law who died in 2006. Johnson described her role in the daily operation of Bea's Place as the owner and manager.

MJohnson Enterprises LLC, according to Johnson, is a separate business that her husband owns and operates. Johnson explained that her husband's company, MJohnson Enterprises LLC, owns the building that her business, Bea's Place, operates out of. Johnson stated that she has no official role in her husband's business but will help him out from time to time with minor tasks.

Regarding Barnes Mobile Home Park, Johnson stated she owns one mobile home that previously belonged to her mother who died in 2006. The mobile home is currently occupied by a family member and is not rented for profit.

Johnson stated she is aware that all activity on government issued computers is monitored by SRNS Cyber Security. This investigator asked Johnson if she kept any documents on her government computer that were related to her personal business. She acknowledged storing such documents and explained that she created a specific folder on her government issued computer to store the documents in. When presented with the number of documents reported by Cyber, 413, Johnson agreed that number was likely accurate. She also acknowledged using her government issued printer to print documents associated with her

01AF000003
24064.0083

Page 4 of 5
05/20/2021

business. She advised the 141 documents reported by Cyber to have been printed on her printer since January 2021 was also likely an accurate number.

This investigator went through some examples of personal business documents located on Johnson's computer by Cyber Security. She recognized the documents, which consisted of inventory reports, menus, schedules, profit and loss statements, and many others, and she confirmed they were solely related to her personal business. Some of the documents, which were labeled "Income Statement," contained the names of other businesses that Johnson was somehow affiliated with, including MJohnson Enterprises LLC and Barnes Mobile Home Park. Johnson explained that these were on her government computer because her husband copied her government e-mail address when he e-mailed the documents to their tax preparer. She stated each time the tax preparer responded to their e-mails, he would reply to all causing her to continue to receive additional documents for these other businesses. Johnson denied using government resources to facilitate the operation of the businesses, other than Bea's Place.

Johnson also acknowledged using the webpages 'Clover' and 'Square' to manage various aspects of Bea's Place while at work using her government computer. Among other tasks, Johnson explained that she was able to view and manage her inventory using these sites. She stated she does not use the sites to manage her business every day while working but will regularly access them for about fifteen minutes. Some days, according to Johnson, she would not access Clover or Square at all, while on other days she would access it a couple of times for several minutes each time. She estimated she never spent more than fifteen minutes on personal business items at one time.

In addition to the use of her government issued computer, printer, and e-mail account, Johnson acknowledged that she loaded a "cash app" onto her government issued iPhone. She explained that the cash app, although used for personal purposes as well, was linked to Bea's Place.

This investigator questioned Johnson about the reason for not disclosing her business on her annual Conflict of Interest Questionnaire. Johnson advised she did not disclose her business because she did not think she needed to as she was not in competition with SRNS nor was she in the same type of business as SRNS.

Johnson stated that she did not know that she was violating any rules when she was using government issued equipment to facilitate the operation of her business. She advised she considered the use to be personal and, therefore, permitted as "de minimus" use. She advised she would remove all of her personal business documents from her computer immediately and would stop all use of government resources in the operation of her business.

### Conclusion(s)

The allegation that Alisha Johnson used government resources to facilitate the operation of her personal business was substantiated. Clear and convincing evidence was collected

01AF000004
24064.0083

Page 5 of 5
05/20/2021

proving that Johnson used her government issued computer, printer, e-mail account, and iPhone to conduct activity related to her personal business while onsite and working in her capacity as an employee of SRNS. This is in violation of the SRNS Rules of Conduct, Manual 5B, Procedure 1-4, Section 5.23.3(2)(A)(4) which states that "All users of Government computers and network resources for incidental personal use are strictly forbidden to…In anyway facilitate the employee's outside, personal business."

# Attachment B

Savannah River Nuclear Solutions
Office of General Counsel
**Internal Investigations**
*Investigative Summary*

February 13, 2023                                                OGC–INV-2023-013

To:     A.L. Reagan, 703-47A

From:   W.F. Carter, 703-47A

## SUMMARY OF INVESTIGATION: CASE 2023FW4-005, MISUSE OF GOVERNMENT RESOURCES (U)

### Predication

A.L. Reagan, General Counsel, Office of General Counsel, predicated this investigation on February 02, 2023.

### Concern

On January 27, 2023, Alison Maurer, Special Agent, Office of the Inspector General, contacted this investigator to request assistance with setting up an interview for an SRNS Employee, identified by Maurer as Alisha Johnson, Work Window Coordinator, HB Line WPMC. Maurer advised that Johnson was the subject of an OIG Criminal Investigation. She declined to offer details but explained that the investigation was loosely related to the misuse of government resources. An interview was set up by this investigator, through Johnson's management, for Thursday, February 02, 2023.

### Purpose of Investigation

To determine if Alisha Johnson used government resources to facilitate the operation of her outside, personal business.

### Individuals Contacted

- Alison Maurer, Special Agent, Office of the Inspector General
- Josh Wright, Senior Computer Security Engineer, Cyber Security
- Alisha Johnson, Work Window Coordinator, HB Line WPMC
- Porter Youngblood, Site Services Section Manager, Maintenance WPC

Page 2 of 10
02/13/2023

## Documents Reviewed

- Cyber Security Forensic Examination Report ECSO-2301-003
- TACS Records of Alisha Johnson

## Details of Investigation

A prior investigation into similar activity was conducted by this investigator in May 2021. On Aril 22, 2021, SRNS Cyber Security notified the SRNS Office of General Counsel, Internal Investigations Section, that potential outside, personal business activity of an employee had been detected. Cyber Security advised that the government issued computer of Alisha Johnson, Work Window Coordinator, HB Line WPMC, had been used by Johnson to access business filings on the website of the South Carolina Secretary of State. According to Cyber Security, Johnson was identified on these forms as the owner of Bea's Place LLC, a bar and grill in Aiken, SC. An investigation was conducted, and evidence was obtained showing that Johnson had used her government issued computer, e-mail account, cell phone, and government printers, to facilitate the operation of her personal business, Bea's Place. She was issued a corrective contact in May 2021.

In response to her initial request to arrange an interview with Johnson, this investigator contacted Alison Maurer, Special Agent, Office of the Inspector General (OIG), on January 30, 2023. The time and location of the requested interview was set and confirmed with Maurer for Thursday, February 02, 2023, in building 703-47A, room 128, at 9:00am.

Maurer provided additional, but very limited, information on the substance of the OIG Investigation. She explained that Johnson was being interviewed in reference to the potential falsification of a government loan application, which may have been completed on her government issued computer. Maurer stressed that no further information could be provided. This investigator asked Maurer if efforts by the SRNS Office of General Counsel (OGC) Internal Investigations Section (IIS) to obtain evidence from SRNS Cyber Security regarding Johnson's use of her government issued computer and e-mail account would interfere with the OIG Investigation. She advised that action would not interfere as long as Johnson was not notified of such action.

On January 30, 2023, this investigator requested that SRNS Cyber Security conduct a forensic examination of Johnson's government issued computer in an attempt to locate evidence of misuse. Josh Wright, Senior Computer Security Engineer, Cyber Security, was assigned to complete the examination. Wright, at the request of this investigator, conducted a quick review, prior to his full examination, so that limited information could be obtained prior to the interview scheduled on February 02, 2023.

Wright provided limited information regarding Johnson's computer use, obtained during the quick review, to this investigator on February 01, 2023. The information obtained consisted mostly of e-mail messages, with attachments, that were sent and received to/from the government issued e-mail account of Johnson. All of the e-mails provided by Wright

01AF000007
24064.0083

Page 3 of 10
02/13/2023

were sent or received by Johnson between June 30, 2021 and January 11, 2023. The e-mails, according to Wright, were located in archive folders titled "*Personal folders*."

The most recent activity associated with the e-mails located by Wright occurred on January 11, 2023. On this date, Johnson sent an e-mail from her srs.gov e-mail account to barnesdkn@gmail.com. This e-mail contained three attachments, one personal and two related to outside businesses Johnson was involved with. The personal attachment was titled *The Johnsons Monthly Budget* and appeared to be a partial monthly budget for Johnson's personal finances. The two business related e-mails were titled *Beas2022* and *306 – January23*.

The Excel Spreadsheet titled *Beas2022* appeared to be a profit and loss statement for Beas Place from January through May. It contained columns labeled January, February, March, April, May, and Total. It also contained rows with various titles appearing to represent sources of income and expenses, to include taxes paid. Numerical figures formatted as currency were input into the fields designated by the titles in the rows and columns.

The Excel Spreadsheet titled *306 – January23* appeared to be a monthly income statement or profit and loss statement. It also contained columns titled Admissions, Food, Beer/Wine, Cash, and Credit, among others. The rows were titled with various dates through out the month of January along with apparent event names such as Social Sunday, Bike Night, Trivia Tuesday, Wing Wednesday, and Fight Night among others. This spreadsheet also had numerical figures input into the fields designated by the row and column titles.

In addition to the spreadsheets, business related admissions tax payment receipts were also observed in the e-mail records provided by Wright. The tax payment receipts were attached to e-mails sent on October 06, 2022, from Johnson's SRS e-mail account, to kizzy.jefferson@dor.sc.gov. The receipts were attached to the e-mail as PDF files that appear to have been obtained from the website of the South Carolina Department of Revenue (SCDOR), www.mydorway.dor.sc.gov. At the top of each of the two PDF files, the web address is visible along with date and time. The date and times on the PDF Files indicate that the files were obtained by Johnson on this website on October 06, 2022, with one showing 3:46pm and the other showing 3:47pm. The e-mail, containing these two attached PDF Files, was then sent on this same date at 3:48pm. The admissions tax receipts indicate that the applicable tax period was January 2022 on one document and February 2022 on the other.

The admissions tax receipts, based upon additional e-mails observed earlier in this thread, were sent following a request from kizzy.jefferson@dor.sc.gov. Early e-mails in the thread show the same tax receipt, from January 2022, was also sent to epreston@stromlaw.com. This earlier copy appears to have been obtained from the same 'mydorway' website on October 06 at 3:01pm.

A contract for live music was also among the documents found in Johnson's e-mail archives. This contract was executed with TreSounds for live performances at Bea's Place

01AF000008
24064.0083

Page 4 of 10
02/13/2023

on July 24, 2021. The e-mail containing the contract was sent by Johnson from her personal e-mail account to her SRS e-mail account. It was sent on June 30, at 2:13pm.

Other business-related documents, such as vendor price lists, a photocopy of a paycheck written for "Weekly pay for kitchen duties," business license forms, business insurance forms, and communications with the South Department of Revenue, were located in the same e-mail archive folder. These documents were sent or received from various external e-mail addresses including those identified as belonging to Alisha Johnson; Marvin Johnson, Husband of Alisha; Kizzy Jefferson, SCDOR; Erika Preston, Strom Law Firm; E. Nick, Strom Law Firm; John Alphin, Strom Law Firm; A. Coffee, City of Aiken; and J. Opfer, City of Aiken.

Documents were also observed that appeared to be related to an action against Bea's Place by the SCDOR regarding their alcohol license. The documents indicate that the license, held by Bea's Place, permitting them to sell alcoholic beverages on premises was revoked following a violation of the law related to allowing gambling. The revocation was finalized on May 31, 2022. Other documents recovered show that around this same time frame, the name of Bea's Place was changed to 306 on York and the business was put into Johnson's husband's name. Johnson's husband, according to additional documents found on her SRS e-mail account, then obtained a new license to sell alcohol at 306 on York. As a result of these actions, it appears that Johnson last operated Bea's Place in her name in May 2022.

The Time and Attendance Collection System (TACS) Records for Johnson from the week ending on June 01, 2021, through the week ending on January 31, 2023, were obtained by this investigator. The dates of computer activity detailed in Wright's report, on which Johnson sent business-related e-mails, were compared to the TACS Records submitted by Johnson. Each of the e-mails containing personal business-related content or attachments were sent during working hours for Johnson, except for one that was sent on a workday after regular working hours.

On February 02, 2023, this investigator conducted an interview with Johnson. She advised that she recalls speaking to this investigator in May 2021 regarding her use of government resources to facilitate the operation of her business, Bea's Place LLC. At the start of the interview, Johnson spontaneously stated, "I have not been back on those sites." She continued, "I may have sent an e-mail here or there," but stated that would be the extent of her use of government resources.

This investigator then asked Johnson if she had continued to store documents related to her personal business on her government computer. She answered by advising that following the previous investigation she attempted to delete all her personal business files from her computer, however, she advised that she was not able to do so, and some files remained. When asked specifically about profit and loss statements, contracts with musical performers, and other business documents, Johnson acknowledged some of those documents were still on her computer but stated that her business was no longer in her name. She declared that she last operated the business, in her name, in May 2022.

Page 5 of 10
02/13/2023

In explaining the profit and loss statement being modified recently using her government computer during regular working hours, Johnson claimed she was trying to enhance her understanding of the Excel spreadsheet program. She stated that she had recently applied for other jobs onsite with SRNS but was concerned about her lack of proficiency with Excel. To become more proficient, she advised she completed YouTube tutorials on her government computer and used an old spreadsheet from her business to complete the tutorial. She asserted that the figures used in the spreadsheet were fictional and maintained that all activity on the spreadsheet was related to training associated with advancement within SRNS and in no way related to her business.

When asked about the document, from her government e-mail account, appearing to be business tax related from October 2022, Johnson stated she was simply sending this item to her husband. She clarified this action was not related to her business, as she alleged her business had been closed, but was solely related to a business of her husband's. She acknowledged this item was sent from her government e-mail and was not related to her job at SRNS.

This investigator asked Johnson if the closing of her business was related to the apparent gaming violation that resulted in the loss of her alcohol license. She responded, "No, no, no, I closed Beas Place on my own." She then explained that she made the decision to close the business because it presented "too much of a liability for me, to be working out here."

As she went through the process of closing her business, Johnson stated she continued to receive business related e-mails on her "work phone." She clarified that these were e-mails related to her personal business that were received through her government issued e-mail account which she accessed on her government issued cell phone and government issued computer. She stated, "I had my work e-mail listed on a lot of stuff and I would get e-mails randomly from different people concerning the business." Johnson continued, "I wasn't trying to run my business from out here. If somebody sent me an e-mail, and I was at work, then I would try to send an e-mail back if they needed it."

The majority of the personal business documents obtained from her e-mail account, according to Johnson, were sent to her husband during the process of putting the business into his name. She claimed that, when the documents were sent, her husband was in Columbia attempting to have everything associated with the business put into his name. When he would need a specific document, Johnson stated she would e-mail it to him. The business name, stated Johnson, was changed from Bea's Place to 306 on York when her husband assumed ownership.

Transfer of her business to her husband, Johnson confirmed, occurred in May of 2022. When asked why e-mails were still being sent in October 2022, she advised that the license had remained current until that time. She stated in October, she sent e-mails to an attorney with Strom Law Firm that she and her husband were using to facilitate the change of ownership. Johnson was asked how the attorney obtained her work e-mail address and she replied that she gave it to him.

01AF000010
24064.0083

Page 6 of 10
02/13/2023

Johnson acknowledged that the use of her government e-mail account was addressed in the previous investigation in May 2021. However, she stated that "what she took away" from the previous investigation was that she could not use websites such as "Clover" and "the Department of Revenue" on her government issued computer to complete activities related to her business. She stated, "I didn't think it would be anything bad with me sending him the e-mails." Johnson explained that he needed the information, and since she could not leave work, she had no other way to send it to him except by e-mail.

An e-mail attachment containing a price list for beverages was then shown to Johnson. She explained that this was sent to her government e-mail from a distributor, related to her former business, because her government e-mail address is the contact they had "on file" for her. She stated she simply forwarded this e-mail, with attachment, to her husband.

This investigator explained to Johnson that a forensic examination of her computer activity had been requested from SRNS Cyber Security. It was further explained to Johnson that, upon receipt, the report would be evaluated, and the information would be compared to the explanations she provided during this interview. Johnson described this situation regarding her using government resources to facilitate the operation of her business as a "freaking nightmare." She added that she has been trying to do everything "by the book" and stated, "I don't even have one business in my name anymore." She advised it has been "one thing after another" since she and her husband separated in May 2022.

Near the end of the interview, Johnson started talking about the Excel spreadsheet which appeared to be a profit and loss statement. She reiterated that this was not an actual profit and loss statement but was an exercise in enhancing her Excel skills. She stated she had never done profit and loss statements as she had used an accountant for that purpose previously when Bea's Place was in her name. This investigator asked Johnson who created the spreadsheets that were located on her computer during the previous investigation, and she advised that she did. She then reiterated that the current spreadsheet was not real and sated she was "just practicing" when she created it. This investigator asked Johnson what she was practicing, and she advised she was practicing "how to build a spreadsheet" using "YouTube for beginners."

Johnson then, without solicitation, referenced the meeting she had with the Office of Inspector General (OIG) just prior to this interview. She stated she had "e-mails to explain everything they asked." She continued, "I am going to send them all of the e-mails I have, and it should, I'm hoping it will, remedy that." Johnson did not mention the OIG interview again and this investigator did not ask her any questions regarding that meeting.

On February 09, 2023, Wright provided a report detailing his complete forensic examination of Johnson's activity on her government issued computer. The report indicates that Wright "discovered various documents and e-mails pertaining to the user's business." In all, he reports discovering 27 files, saved to Johnson's computer, and more than 80 e-mails that directly relate to the outside, personal business activity of Johnson and her husband.

01AF000011
24064.0083

Page 7 of 10
02/13/2023

Part of his review, according to Wright's report, involved examining internet searches conducted by Johnson. Some notable searches, related to Johnson's outside business, were located during this process. Wright reported that Johnson searched the phrase "YouTube spreadsheet for a small business" on January 5th, 9th, 10th, 12th, and 24th, in this calendar year (2023). Additionally, she used various terms to conduct similar searches related to creating spreadsheets. She also searched the phrases "profit and loss statements," "small business tax returns," "what is considered material for business purposes," and others. On December 28th and 29th, 2022, Wright reported that Johnson searched the term "Clover," which was identified in the previous investigation, from May 2021, as an online application that Johnson acknowledged using in the operation of her business.

Johnson, according to Wright's report, also used YouTube to watch videos related to her outside, personal business. From January 1st through January 17th (2023), Johnson played a total of 43 YouTube videos. Of the 43, there were 27 videos that were solely related to small business. The remainder of the videos were associated with topics that could be related to either business or personal matters, including personal finance. Some of the titles of the videos played by Johnson, related to business, were *"Bookkeeping for Small Business," "Cash Flow Statement Basics," "Excel: Build an Income Statement," "How to Process Payroll,"* and *"Accounting Basics for Small Business Owners."*

While reviewing Johnson's computer activity, Wright reported that he also observed approximately 27 documents or files saved to Johnson's government issued computer that were specifically related to her business. The files, according to Wright's report, were either created, modified, accessed, or printed from her government computer. All of the activity with these particular files occurred after the conclusion of the previous investigation into Johnson's computer use in May 2021. The documents consisted of spreadsheets with financial information, leases, inventories, ledgers, and legal forms, all associated with "306 on York" and "Bea's Place."

An interview was conducted, on February 13, 2023, with Porter Youngblood, Site Services Section Manager, Maintenance WPC, the direct-report manager of Johnson. He stated he has not detected any performance issues with Johnson and has not observed her using government resources for any purpose other than completing duties associated with her job for SRNS.

A follow up interview was conducted with Johnson on February 15, 2023. Johnson was informed that the full SRNS Cyber Security Report, which documented her computer use, had been received. This investigator first showed Johnson the internet searches that were identified in the cyber report. She acknowledged that the information in this section of the report accurately reflected her use. Regarding the two searches for Clover, identified in the previous investigation as a site used by Johnson in facilitating the operation of her business, Johnson stated she was trying to contact the site because she received an e-mail from them about fraud. She stated she no longer has an account with Clover but wanted to contact them to ensure her information was not fraudulently obtained.

01AF000012
24064.0083

Page 8 of 10
02/13/2023

Regarding the searches for small business tax related content, Johnson admitted that she conducted the searches but stated it was after all her businesses were closed. She stated her intent was to get answers to questions she had about how to handle her business tax situation after closing her businesses. She claimed that she has not yet completed her tax return for last year's income.

When asked about the many searches related to other small business topics that she conducted, Johnson maintained these were all part of her effort to practice using Excel, to better her skill set for employment with SRNS. When asked why she would attach the term 'small business' to these searches, Johnson stated she did so because that is what she is familiar with in her previous use of Excel.

In reference to her search for 'SCDOR (South Carolina Department of Revenue) Legal Counsel,' Johnson stated this was in reference to the transfer of "the ABL licenses." She confirmed this was related to her loss of her alcohol license for Bea's Place and her husband's obtaining an alcohol license for 306 on York.

Johnson stated, "I wasn't trying to use anything for business." She described the past two years of her life as "a whirlwind." She elaborated explaining that she had been diagnosed with PTSD, became separated from her husband, received chemotherapy treatments, and had one of her children go through a "psychotic break." She stated she remained in turmoil until last May (2022) when she began to "come around" and started to feel like herself again. Johnson stated she has "gone over everything" the past two weeks and is concerned that she will lose her job. She explained that she does not operate any businesses and would be "destitute" should she lose her job, and career, with SRNS. She stated she has not been able to eat or sleep during the past two weeks and has been in constant contact with her therapist. She said this process, the past two weeks with this internal investigation and the OIG Investigation, has been overwhelming for her and she has not "tried to do anything wrong" with respect to her employment with SRNS. Johnson went on to say, "I am not trying to do anything malicious; I have made some bad judgement calls, but I can't lose my job, this is all I have left."

The previous SRNS Internal Investigation was then brought up by Johnson. She alleged that she had "stayed away" from the websites that were the reason that investigation was initiated (Clover and SCDOR). She stated she realizes that she is in "a red zone" because she has "done some things and looked at some things."

This investigator then reviewed the YouTube searches, and videos played, with Johnson that were reported by Wright. She sustained her previous explanation that she was completing a tutorial for herself to increase her efficiency with Excel. Questions were posed to Johnson, by this investigator, in an attempt to determine why her searches included the term 'small business." She stated, "It's because of me, trying to do a tutorial for myself." Johnson explained that she learns best through trying to teach herself with hands on learning. She advised she had recently contacted SRNS Talent Management seeking to "beef up" her Excel skills. They recommended an application for her to use to

01AF000013
24064.0083

Page 9 of 10
02/13/2023

practice, however, Johnson stated she was not successful with it and decided to take YouTube tutorials instead.

Johnson was then shown the list of documents that were determined by cyber security to be stored on her computer and appeared to be business related. She stated she recognized the document file names as hers. She explained that most of the documents were from when she "changed over the business" in October 2022. Johnson clarified that "changed over" referred to the moving of the business, legally, from her name to her husband's name. She stated these are the documents that she sent to her husband to facilitate the change. She explained that most of these documents were related to the business license transition into her husband's name.

When asked by this investigator, Johnson stated she recalled receiving a corrective contact following the previous investigation from May 2021. Johnson was asked if she followed through with reviewing the two sections of the SRNS Policy Manual 5B, as instructed in her contact. She answered, "Just to be honest, whenever I received the corrective contact, that's during the time...I was under medication, through VA, going through the anxiety and depression, all of that stuff, and I was going to AA, through VA...I was just existing." Johnson advised that she felt this way for about two years and went to therapy for eighteen months, visiting her therapist twice per week for the first year. During this time, she stated, "In my mind, let me tell you, I thought that as long as I wasn't going to Clover, looking at my sales, going to DOR and doing my taxes...I thought those were the only two things that were off limits. That's what I really thought. All of the...I did not think that anything else was wrong." She continued, "So, and I know what it looks like, and I know how it is, I am smart enough and I have got enough sense enough to know that, yeah, I have, I am in violation, I am, and I cannot make any more explanations just to tell you that I did not go into it thinking that I am sneaking doing something. If I would have known...with all the information that I have now, I, if given the opportunity to keep my job, I would never go on the government computer and do anything, I would never go to any outside sources or anything because...I am about to tell you, right now, the part that I am in, I know that I am in jeopardy of possibly losing my job."

Johnson then, without prompting from this investigator, referred to the OIG investigation. She stated that investigation was in reference to an "SBA Loan" and offered that "the guy that did my taxes" found "whatever was missing" and I e-mailed "them" all that information. She explained that, after sending in that information, she is no longer concerned about "that part" but is now solely concerned with this internal investigation. Johnson stated, "If I would have actually known that...that was going to be perceived as me working on my business, I promise...I never would have, but I don't have a business anymore, so that's why I didn't correlate it."

**Conclusion(s)**

The allegation that Alisha Johnson used government resources to facilitate the operation of her outside, personal business was substantiated. Clear and convincing evidence was obtained proving that Johnson used her government issued computer and government

01AF000014
24064.0083

Page 9 of 10
02/13/2023

practice, however, Johnson stated she was not successful with it and decided to take YouTube tutorials instead.

Johnson was then shown the list of documents that were determined by cyber security to be stored on her computer and appeared to be business related. She stated she recognized the document file names as hers. She explained that most of the documents were from when she "changed over the business" in October 2022. Johnson clarified that "changed over" referred to the moving of the business, legally, from her name to her husband's name. She stated these are the documents that she sent to her husband to facilitate the change. She explained that most of these documents were related to the business license transition into her husband's name.

When asked by this investigator, Johnson stated she recalled receiving a corrective contact following the previous investigation from May 2021. Johnson was asked if she followed through with reviewing the two sections of the SRNS Policy Manual 5B, as instructed in her contact. She answered, "Just to be honest, whenever I received the corrective contact, that's during the time...I was under medication, through VA, going through the anxiety and depression, all of that stuff, and I was going to AA, through VA...I was just existing." Johnson advised that she felt this way for about two years and went to therapy for eighteen months, visiting her therapist twice per week for the first year. During this time, she stated, "In my mind, let me tell you, I thought that as long as I wasn't going to Clover, looking at my sales, going to DOR and doing my taxes...I thought those were the only two things that were off limits. That's what I really thought. All of the...I did not think that anything else was wrong." She continued, "So, and I know what it looks like, and I know how it is, I am smart enough and I have got enough sense enough to know that, yeah, I have, I am in violation, I am, and I cannot make any more explanations just to tell you that I did not go into it thinking that I am sneaking doing something. If I would have known...with all the information that I have now, I, if given the opportunity to keep my job, I would never go on the government computer and do anything, I would never go to any outside sources or anything because...I am about to tell you, right now, the part that I am in, I know that I am in jeopardy of possibly losing my job."

Johnson then, without prompting from this investigator, referred to the OIG investigation. She stated that investigation was in reference to an "SBA Loan" and offered that "the guy that did my taxes" found "whatever was missing" and I e-mailed "them" all that information. She explained that, after sending in that information, she is no longer concerned about "that part" but is now solely concerned with this internal investigation. Johnson stated, "If I would have actually known that...that was going to be perceived as me working on my business, I promise...I never would have, but I don't have a business anymore, so that's why I didn't correlate it."

**Conclusion(s)**

The allegation that Alisha Johnson used government resources to facilitate the operation of her outside, personal business was substantiated. Clear and convincing evidence was obtained proving that Johnson used her government issued computer and government

Page 10 of 10
02/13/2023

issued e-mail account to conduct operations solely related to her personal business, Bea's Place, and her husband's personal business, 306 on York. This is in violation of the SRNS Rules of Conduct, Manual 5B, Procedure 1-4, Section 5.23.3(2)(A)(4) which states that "All users of Government computers and network resources for incidental personal use are strictly forbidden to…In anyway facilitate the employee's outside, personal business."

The evidence obtained during the course of this investigation also shows that Johnson made inconsistent and false statements to this investigator. Johnson expressly asserted that she had not visited the Clover website or the South Carolina Department of Revenue (SCDOR) website since receiving a corrective contact following the May 2021 investigation. However, indisputable evidence, containing a date and time stamp, was presented by SRNS Cyber Security showing that Johnson visited the SCDOR website at least two times on October 06, 2022. Additionally, the evidence related to Johnson's searching for Excel Spreadsheet information for small businesses refutes her claim that her spreadsheet activity in January 2023 was not related to her business. These actions are in violation of the SRNS HR Rules of Conduct, Manual 5B, Procedure 1-4, Section 5.1.5 (Q), which prohibits "Failure to fully cooperate and/or provide requested information, including but not limited to, making false statements or intentionally misleading management or investigators during the course of a company investigation."