IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Alisha Johnson, | ) | Case No. 1:24-cv-02612-JDA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S REPLY TO** |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| Savannah River Nuclear Solutions, LLC, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant Savannah River Nuclear Solutions, LLC ("SRNS") submits this reply to Plaintiff's opposition to SRNS's motion for summary judgment. Because Plaintiff has failed to undermine SRNS's arguments, the Court should grant summary judgment to SRNS.

**I. Title VII Discriminatory Termination (Race and Sex)**

> **Plaintiff has (A) failed to establish a *prima facie* case of discrimination as she has not identified a comparator treated more favorably, and (B) not shown as pretextual SRNS's legitimate, non-discriminatory reasons for terminating her—violating policy by using her government-issued computer for personal business activities, and making false statements during an investigation. Thus, the Court should grant summary judgment to SRNS on Plaintiff's discriminatory termination claims.**

**A. No *Prima Facie* Case of Discriminatory Termination**

In support of its motion for summary judgment, SRNS has argued that Plaintiff cannot establish a *prima facie* case of discrimination because she is unable to offer any evidence that SRNS ever retained an employee who had (1) violated SRNS's technology resources policy a second time, and (2) made false statements during an investigation. In opposition, Plaintiff argues that an SRNS employee who ran a personal business using government computers received only a corrective action and 12 months of probation, and another employee was terminated for viewing

1

sexually explicit materials on a government computer. [Plaintiff's memo, p. 16] Plaintiff contends she was treated more harshly than the former, and her misconduct was not as serious as the latter.

Plaintiff's argument fails for three reasons. First, Plaintiff overlooks the fact that with the *prima facie* case, it is her burden to show that "other employees who are not members of the protected class were retained under apparently similar circumstances." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). Plaintiff has not satisfied either prong of the *prima facie* test under *Honor*: she has not offered evidence that any of the employees whom she claims were treated more favorably were outside of "the protected class" nor demonstrated that they were retained under "apparently similar circumstances." *See id*. There is no evidence in the record as to the first prong. Regarding the second prong, she has not shown that the employee who received the corrective action and 12 months' probation received the discipline for a first offense or, like Plaintiff, for a second offense. Indeed, SRNS has confirmed that the employee in question received the corrective action and 12 months' probation for a first offense. [Henderson (Second) Declaration] Accordingly, summary judgment is appropriate. *See Mitchell v. Secretary Veterans Affs.*, 467 F.Supp.2d 544, 552 (D.S.C. 2006) (4th Cir. 2008) (granting summary judgment as the plaintiff "has not presented evidence that other similarly situated employees who were not members of the protected class were treated more favorably under similar circumstances").

Second, Plaintiff conveniently omits mention of a third employee (Brittany Morgan), who, like Plaintiff, was terminated for using government equipment for personal business. [Natalia Johnson Declaration, Attachment A, p. 3][1]  Unlike the two comparators, this employee was not

---

[1] Except for a few record references that are attached, all others cited in this memorandum were previously submitted with SRNS's Memorandum in Support of Defendant's Motion for Summary Judgment ("SRNS's memo") filed on June 12, 2025.

2

"retained under apparently similar circumstances." *See Honor*, 383 F.3d at 188. Thus, Plaintiff was not treated more harshly than this closer comparator.

Third, Plaintiff is unable to make out a *prima facie* case because she has failed to identify a true comparator who was treated more favorably, namely, an employee who (1) after receiving one corrective action for misusing government-issued computers was caught a second time for committing the same policy violation, and (2) made false statements during the investigation. *See Coby v. South Carolina Probation, Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) ("The similarly situated element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in *some* respects, but "similarly-situated *in all respects*."'") (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019)) (emphasis in original).

Because Plaintiff's *prima facie* case fails, SRNS is entitled to summary judgment.

**B. SRNS's Legitimate Non-Discriminatory Reasons for Termination**

The Court should also grant SRNS summary judgment on Plaintiff's discriminatory termination claim because Plaintiff has not shown as pretextual both of SRNS's reasons for terminating her—violating SRNS's policies by using government resources for personal business purposes and making false statements during the investigation into her improper computer use.[2]

Initially, Plaintiff's pretext argument that she did not violate SRNS's policy prohibiting personal business use of government resources fails because she has admitted that she violated the policy. In her Charge of Discrimination, Plaintiff conceded that before the disciplinary review

---

[2] In her opposition memorandum, in relation to her discriminatory termination claim, Plaintiff relies on the same argument she makes as to her retaliatory discharge claim. [Plaintiff's memo, p. 16; *see id*., pp. 10-13] The arguments here regarding pretext apply equally to Plaintiff's arguments against summary judgment on her retaliation claims.

3

board, "she was transparent and acknowledged that she had violated policy." [P. dep., D. Ex. 6][3] Having acknowledged under oath that she violated SRNS's policy, she cannot now contend that SRNS's decision to terminate her for violating that policy was pretextual.

Nevertheless, citing SRNS's policy on "Incidental Personal Use of Government Information Technology (IT) Resources," Plaintiff argues that her violation should not have given rise to her termination because it was "de minimis (insignificant)." [Plaintiff's memo, p. 11; *see* Blankenship Declaration, Attachment A (sec. 5.23.3)] Plaintiff has not accurately represented the policy or the facts in the record. Initially, she has cited only the policy's introductory language, ignoring its more detailed provisions (section 2), which explicitly set out "Limitations":

> All users of Government computers and network resources for incidental personal use are strictly forbidden to:
> …
> 3) Involve personal gain (beyond SIP, banking, or credit union account management)
> 4) In any way facilitate the employee's outside, personal business
> …
> 17) Allow use of Government computer resources by non-employees including family members or friends

[Blankenship Declaration, Attachment A (sec. 5.23.3.2.A)]

Plaintiff attempts to escape the impact of these provisions by arguing that she sold her businesses in May 2022, so she could not have personally profited from them. However, Plaintiff's argument conflates subsections 3 and 4 quoted above, which are independent provisions. Subsection 4, which concerns uses that "[i]n any way facilitate the employee's outside, personal business," does not require "personal gain." Therefore, even if an employee is not personally gaining from the use, she violates the policy if it facilitates "the employee's outside, personal

---

[3] In her Complaint, Plaintiff also stated that she violated the policy, [Complaint, ¶ 46], which SRNS's Answer admitted, [Answer, ¶ 46], so the policy violation is an established fact.

4

business." The record shows that even after Plaintiff claims to have sold her business (Bea's Place) in May 2022, she was still using government resources to communicate about it. [*E.g.*, Wright Declaration, Attachment B, pp. 10-13 (6/16/22 email attaching "Bea's Place Aiken.pdf"; 6/22/22 email attaching "Bs Place LPR.pdf"; 9/22/22 email re: "South Carolina Department of Revenue – BEA's Place"; 1/10/23 email attaching "BEAS2022.xlsx")]

Further, Plaintiff's argument that selling Bea's Place absolves her of all policy violations does not paint the full picture: she transferred ownership of Bea's Place to her husband and changed the business name to "306 on York" as a practical necessity, because the alcohol license of Bea's Place had been revoked for gambling law violations. [Carter Declaration, Attachment B, pp. 4, 8; P. dep., p. 201] SRNS's investigation uncovered numerous emails from Plaintiff *after* May 2022 regarding 306 on York, including to the law firm handling the business's transfer. [Wright Declaration, Attachment B, pp. 11-13] Either 306 on York was effectively Plaintiff's, her husband's, or their joint business. If it was hers or joint, she was violating subsection 4's prohibition on facilitating "the employee's outside, personal business." If it was her husband's, she was, in essence, violating subsection 17's prohibition on allowing use of government resources "by non-employees including family members" (because she would have been acting as her husband's scribe in using government resources for his business).

Moreover, the investigator's findings and report reveal that Plaintiff's computer use for her and her husband's businesses was far from incidental, with more than 80 emails and 27 saved files appearing on her work computer related to these businesses. [Wright Declaration, Attachment B; Carter Declaration, Attachment B, p. 6] Plaintiff undertook this level of activity even after SRNS had specifically warned her in 2021 not to engage in such policy violations, and she had "agree[d] to stop using government resources for personal businesses immediately." [P. dep., D. Ex. 22]

5

Plaintiff downplays her government computer use by falsely claiming that she merely sent a tax form using her computer and just accessed some YouTube videos for training purposes. [Plaintiff's memo, p. 5] She has not accurately described the record. A review of the investigator's findings, including the forensic analysis of her computer, revealed much more. She had sent or received dozens of emails to herself, her husband, her lawyers, the City of Aiken, Dominion Energy, other vendors, and the S.C. Department of Revenue in relation to her or her husband's businesses, as well as generating or storing other documents consistent with running businesses. [Wright Declaration, Attachment B, pp. 8-13; Carter Declaration, Attachment B, pp. 3-4]

Plaintiff also challenges SRNS's second basis for her termination, specifically, that she had made false statements to the investigator when she had told him that she had not visited the Clover and S.C. Department of Revenue websites since the 2021 investigation. [Carter Declaration, Attachment B, p. 10; Natalia Johnson Declaration, p. 2; Sprague Declaration, p. 2] Disputing the investigator's conclusions, Plaintiff now argues that she did not make false statements to him because she, in fact, told him that she had accessed the Clover and S.C. Department of Revenue websites. [Plaintiff's memo, pp. 12-13] However, Plaintiff's current argument is at odds with her own deposition testimony, wherein she confirmed that she told the investigator that she had *not* been to those two websites but later claimed that she had visited them. [P. dep., pp. 201, 210-11, 215] Under Fourth Circuit law, "'a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.'" *In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (quoting *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010)); *Williams v. Genex Servs., LLC*, 809 F.3d 103, 110 (4th Cir. 2015) ("[A] plaintiff may not avoid summary judgment by sub-mitting contradictory evidence."). Given Plaintiff's inconsistent statements, there is no pretext.

In effect, Plaintiff argues the investigation was unfair and shoddy. However, "Title VII does not entitle an employee to 'an even, fair, or just investigation.'" *Fail v. Savannah River Nuclear Sltns, LLC*, No. 1:19-cv-2910-JFA-SVH, 2021 WL 2154806, at *5 (D.S.C. May 27, 2021) (citation omitted). Only "evidence of [an] *obviously inadequate* investigation in the employee's misconduct could tend to show that claimed employee misconduct was actually pretext for prohibited animus." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 905 (4th Cir. 2017) (emphasis added). Plaintiff points to no facts to demonstrate the investigation was obviously inadequate. In his investigation, SRNS's investigator interviewed multiple witnesses, including Plaintiff twice; reviewed documents, including the forensic investigator's detailed, 18-page findings; and issued a nearly 10-page, single-spaced report. [Carter Declaration, Attachment B; Wright Declaration, Attachment B]. Plaintiff cannot show the investigation was obviously inadequate.

Moreover, whether SRNS "investigated more thoroughly is immaterial; what matters for purposes of proving discrimination is the decision-makers' perception of the underlying facts." *Sales v. Res-Care, Inc.*, No. 3:18-cv-03591-JFA-JDA, 2021 WL 1186553, at *4 n.3 (D.S.C. Mar. 30, 2021) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011). Here, the decision-makers believed the investigation's findings. [Whitcomb Declaration, p. 2; Henderson Declaration, p. 2; Natalia Johnson Declaration, p. 2]

Because Plaintiff cannot demonstrate SRNS's legitimate, non-discriminatory reasons are pretextual, SRNS is entitled to summary judgment on Plaintiff's discriminatory discharge claims.

## II. Title VII Discriminatory Failure to Promote (Race and Sex)

**As Plaintiff has failed to rebut SRNS's arguments, the Court should grant summary judgment to SRNS on Plaintiff's failure to promote claims because (A) the claims are time-barred, (B) Plaintiff failed to apply for the positions in question, and (C) Plaintiff cannot rebut SRNS's legitimate, non-discriminatory reason for its actions.**

### A. Time-Barred

Initially, SRNS has moved for summary judgment on Plaintiff's failure to promote claims because the alleged adverse actions occurred no later than July 1, 2022—more than 300 days before the filing of her May 19, 2023 Charge of Discrimination. [SRNS's memo, pp. 16-17] In her opposition memorandum, Plaintiff does not dispute these facts. Instead, she argues that SRNS has waived this argument because it did not raise an untimeliness defense in its Answer but only pled that Plaintiff's claims "are barred by the applicable statute of limitations." [Plaintiff's memo, p. 13 (quoting Answer, ¶ 81)]

Plaintiff's argument is unavailing as she incorrectly assumes that Title VII's 300-day limitations period—which is found in 42 U.S.C. § 2000e-5(e)—is something other than a statute of limitation. Fourth Circuit caselaw instructs otherwise. In *E.E.O.C. v. Hansa Products, Inc.*, the Fourth Circuit Court of Appeals, quoting 42 U.S.C. § 2000e-5(e), noted that in deferral states (like South Carolina), "[t]he *statute of limitations* for filing a charge with the EEOC provides" that "'such charge shall be filed … within three hundred days after the alleged unlawful employment practice occurred.'" 844 F.2d 191, 192 (4th Cir. 1988) (emphasis added). Other precedents have similarly described Title VII's 300-day filing period as a statute of limitation. *Mezu v. Morgan State Univ.*, 367 Fed. Appx. 385, 388 (4th Cir. 2010) (concluding that because the plaintiff "instituted proceedings with a state agency, the 300-day statute of limitation applies" to his Title VII claim); *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 439 n.2 (4th Cir. 1998) ("[W]e hold that the appropriate statute of limitations period was 300 days" under Title VII.); *see Capone v. City of Columbia*, C/A No. 3:19-2490-CMC-PJG, 2020 WL 3448039, *3 (D.S.C. June 24, 2020) (Gossett, M.J.) (agreeing as to Title VII and ADA claims that Plaintiff's "charge of discrimination was not filed within the requisite 300-day statute of limitations").

SRNS pled the affirmative defense of the statute of limitations in its Answer. [Answer, ¶ 81] Therefore, it has not waived any argument that Plaintiff's Title VII failure to promote claims are untimely. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 45 (1st Cir. 2005) (holding in a Title VII case that where the defendant had pled in its Answer that the plaintiff's claims were "barred by the applicable statute of limitations and/or jurisdictional time frames," the defendant had "adequately identified the issue").

In support, Plaintiff cites *Ritchie v. Aker Kvaerner Songer, Inc.*, C/A No. 6:07-cv-00959, 2009 WL 1070555 (S.D. W.Va. Nov. 13, 2009), in which the defendant had failed "to raise the[] statute of limitations defenses in its Answer" as to Plaintiff's FMLA and wrongful discharge claims. *Id*. at *15. *Ritchie* does not advance Plaintiff's argument because the current claim is under Title VII, not under the FMLA or for state law wrongful discharge. More importantly, unlike the defendant in *Ritchie*, SRNS *did* raise the statute of limitations defense in its Answer, consistent with how the Fourth Circuit has viewed Title VII's 300-day limitations period.

Because Plaintiff's waiver argument lacks a foundation and because she has not opposed the merits of SRNS's position that her failure to promote claims are untimely, the Court should grant SRNS's motion for summary judgment on these claims. *See Matusiewicz v. Florence Cty Sheriff's Off.*, No. 4:16-cv-01595-DCC-KDW, 2019 WL 3416616, at *8 (D.S.C. May 30, 2019) ("Where a party fails to respond to the opposing party's argument in support of the opposing party's motion for summary judgment, the party who fails to respond will be found to have conceded to that argument."), *aff'd in relevant part by*, 2019 WL 3413385 (D.S.C. July 29, 2019).

**B. Plaintiff's Failure to Apply for Positions**

SRNS has also moved for summary judgment on Plaintiff's claims for denied promotions on the grounds that she has not demonstrated a *prima facie* case of discrimination inasmuch as she

9

did not apply for the positions in question. In opposition, Plaintiff argues that she "had no opportunity to apply" for the positions because they were not and had never been posted. [Plaintiff's memo, p. 14] In other words, SRNS had preselected the desired candidates and did not give Plaintiff an opportunity to apply. However, Plaintiff's opposition memorandum does not address the three arguments SRNS had advanced related to preselection, including that she still had the obligation to at least express specific interest in the positions, and that under Fourth Circuit law, preselection is not evidence of discrimination, because such a decision would impact other potential applicants within and without the protected class. [SRNS's memo, pp. 18-19]

Ignoring these reasons, Plaintiff instead argues that evidence of "the unequal way" SRNS conducted the promotional process is probative of discrimination. [Plaintiff's memo, p. 14 (citing *Dennis v. Columbia Colleton Med. Center, Inc.*, 290 F.3d 639, 647 (4th Cir. 2002))] *Dennis* is inapposite because it involved unequal treatment of candidates *after* the plaintiff had applied. *Id*. at 643, 647. By contrast, here, SRNS's argument is that Plaintiff did not apply, nor did she express interest in the positions—and Plaintiff does not dispute that she never applied or expressed interest in the positions. Therefore, she has not established a *prima facie* case of discrimination.

**C. SRNS's Legitimate, Non-Discriminatory Reason**

Plaintiff is also unable to show as pretextual SRNS's legitimate, non-discriminatory reason for its actions, namely, Youngblood's error in filling positions that did not exist at the time. In her opposition memorandum, Plaintiff—again citing *Dennis*—contends that SRNS's "inconsistent post-hoc explanations for its employment decisions is probative of pretext." [Plaintiff's memo, p. 15] While Plaintiff is right that inconsistent statements can show pretext, she is wrong on the facts. SRNS has not offered inconsistent explanations; rather, it has maintained the same, consistent explanation since Plaintiff complained about Youngblood awarding the positions to others. As

Bodie (Youngblood's supervisor) testified, Youngblood erred in attempting to fill the SPOC and lead planner positions because no such discrete positions existed at the time. [Bodie dep., pp. 27, 32, 36; Youngblood dep., p. 48] Indeed, Plaintiff herself confirmed that "Eddie [Bodie] at the time said that Porter [Youngblood] effed up because he didn't follow practice as it happened. He also said that he did not sign off for Porter's actions as far as the way he chose the SPOC and the Lead Planner." [P. dep., p. 72] Upon learning of Youngblood's mistake, Bodie counselled Youngblood about his management practices. [Bodie dep., p. 37; Youngblood dep., P. Ex. 1] And, as Plaintiff admits, when she met with Bodie, Youngblood, Hart, and Blankenship, it was acknowledged the promotions constituted "a poor management decision." [Plaintiff's memo, p. 4]

Consistent with the position SRNS has taken since Plaintiff first complained, SRNS has argued in its summary judgment motion that Youngblood erroneously deviated from policy by awarding the two positions that no longer existed. [SRNS's memo, pp. 19-21] While perhaps not "wise, fair, or even correct," this ultimately "truly was the reason" for the adverse action, so it is a legitimate, non-discriminatory reason. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (citation omitted). Because SRNS's factual position on the filling of the SPOC and lead planner jobs has been consistent, non-discriminatory, and non-pretextual, SRNS should be granted summary judgment on Plaintiff's failure to promote claims.[4]

### III. Title VII Discriminatory Discipline (Race and Sex)

**The Court should grant summary judgment to SRNS on Plaintiff's discriminatory discipline claim because she has conceded she was treated the same as a white, male comparator, and she has not objected to SRNS's remaining arguments that she has not suffered an adverse employment action and cannot rebut SRNS's legitimate, non-discriminatory reason for issuing a corrective action to her.**

---

[4] Even if the failure to promote claims had been viable, Plaintiff has no damages. She concedes the position offered no pay increase. [Plaintiff's memo, p. 2] And she was terminated for misusing government resources before any other promotional opportunity arose.

Plaintiff has abandoned her discriminatory discipline claim because she "concedes she was treated the same as a white male employee following a racially charged incident." [Plaintiff's memo, p. 16]  Moreover, she offers no opposition to SRNS's remaining arguments on her discriminatory discipline claim.  [SRNS's memo, pp. 22-26]  Therefore, the Court should grant summary judgment to SRNS on this claim.  *See Matusiewicz*, 2019 WL 3416616, at *8.

## IV. Title VII Retaliation

**The Court should grant summary judgment to SRNS on Plaintiff's Title VII retaliation claim because she cannot show causation or overcome SRNS's legitimate, non-discriminatory reasons for its actions.**

In her opposition memorandum, Plaintiff argues that the basis of her retaliation claim is "Defendant's subjugation [sic] of Plaintiff to an investigation, DRB [disciplinary review board], and ultimately termination."  [Plaintiff's memo, p. 9]  Plaintiff's newfound retaliation claim—which is not specified in her Charge of Discrimination or in her Complaint—fails on the merits because she cannot show causation, that is, that her complaints about alleged discrimination were the cause of her investigation, the disciplinary review board proceeding, or termination.

As for the investigation, the only evidence in the record is that a third-party, the Office of Inspector General, notified SRNS of Plaintiff's suspicious conduct. [Carter Declaration, Attachment B, pp. 1-2]  SRNS's policy requires that it comply with Office of Inspector General requests, so SRNS began an investigation. [*See* Blankenship Declaration, Attachment A (sec. 4.1)]. Plaintiff has pointed to no evidence that the Office of Inspector General or SRNS's investigator were aware of her discrimination complaints, which led to her investigation. *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (explaining that for Title VII retaliation claims, "the plaintiff must show that a relevant decisionmaker was actually aware of the protected activity before making their decision").  Contrary to Plaintiff's bald assertion—with no citation to the record—

that SRNS subjected her to "a fishing expedition," [Plaintiff's memo, p. 11], Plaintiff has not pointed to any fact, other than the notification from the Office of Inspector General, that led SRNS to launch an investigation.

As to Plaintiff being brought before the disciplinary review board in late February 2023 and being terminated in March 2023, Plaintiff faces two insurmountable causation hurdles. Initially, again, the undisputed evidence is that none of the decisionmakers—the members of the disciplinary review board and Rick Sprague, the Chief Executive Officer's designee—knew of Plaintiff's discrimination complaints. *Barnhill*, 138 F.4th at 132; [P. dep., pp. 250-51; Natalia Johnson Declaration, p. 2; Henderson Declaration, p. 2; Whitcomb Declaration, p. 2; Sprague Declaration, p. 3]  Causation also fails because Plaintiff cannot overcome the more than three-month gap between, on the one hand, her last discrimination complaint in mid-November 2022,[5] and, on the other, her disciplinary review board proceeding in late February 2023 or termination in March 2023. *Barnhill*, 138 F.4th at 132 ("While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months.").

In opposition, Plaintiff argues that "Hart and Youngblood … also recommended termination" and that the disciplinary review board "could not have acted without management's involvement." [Plaintiff's memo, p. 10]  In essence, Plaintiff is positing a "cat's paw" theory—that David Hart (Bodie's supervisor) and Youngblood influenced the decision to terminate Plaintiff.  Fourth Circuit precedents foreclose Plaintiff's argument.  In *Hill v. Lockheed Martin*

---

[5] In her deposition, Plaintiff could not recall the exact date of her last meeting in 2022 with Bodie, Youngblood, Hart, and Blankenship (wherein she complained about discrimination). [P. dep., p. 71]  Blankenship confirmed the meeting was in mid-November.  [Blankenship dep., p. 32]

*Logistics Management, Inc.*, the Fourth Circuit analyzed the "cat's paw" theory, holding that "to survive summary judgment, an aggrieved employee who rests a discrimination claim under Title VII … upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." 354 F.3d 277, 291 (4th Cir. 1994) (en banc).  More recently, the Court of Appeals applied *Hill* and other Fourth Circuit precedents to clarify that the offending colleague would need to be viewed as the "actual decisionmaker" and that substantial influence is insufficient.  *Barnhill*, 138 F.4th at 134 (citing cases); *see Brunson v. Benedict College*, C/A No. 3:22-cv-03921-JDA-PJG, 2024 WL 4486462, *6 n.6 (Apr. 30, 2024) (applying the *Hill* standard in rejecting the plaintiff's "cat's paw" theory), *aff'd in relevant part in*, 2024 WL 4284657, *5 (Sept. 25, 2024).

Plaintiff's argument that Hart and Youngblood recommended termination and that the disciplinary review board could not have acted without their involvement (as in appearing at its hearing—just like Plaintiff did) falls far short of meeting the standard to establish her "cat's paw" theory.  She has not shown that either Hart or Youngblood were the actual decisionmakers; indeed, she has not even shown substantial influence—which itself is insufficient under *Hill* and its progeny.  To the contrary, the only evidence in the record is that the disciplinary review board panel, which consisted of SRNS employees other than Plaintiff's supervisors, is independent.  [Blankenship Declaration, p. 2]  Indeed, SRNS's Senior Human Resources Specialist, who has participated in some 50 disciplinary review board proceedings, confirmed that "the decisions made by the Panels often differ from those recommended by the employee's supervisor(s)." [*Id*.]  Thus, no evidence has been presented that the disciplinary review board merely rubber-stamped the supervisors' recommendations, and the evidence in the record demonstrates the opposite.

But Plaintiff's argument is even more attenuated because the disciplinary review board panel itself was not the actual decisionmaker; rather, it only made a recommendation to Sprague, the Chief Executive Officer's designee, who was the actual decisionmaker. [Sprague Declaration] Plaintiff has not suggested that Hart and Youngblood had any contact with Sprague. Even assuming Hart or Youngblood had a retaliatory motive—which Plaintiff has not shown—they were simply too far removed from the final decision-making process for Plaintiff's retaliation claim to survive summary judgment.

Plaintiff additionally cannot show SRNS's reasons for terminating Plaintiff are pretext for retaliation for the same reasons her pretext arguments fail regarding her discrimination claims. Thus, SRNS is entitled to summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

Because Plaintiff has not been able to rebut SRNS's arguments, the Court should grant summary judgment to SRNS on all of Plaintiff's causes of action.

Respectfully submitted,

s/Phillips L. McWilliams
Phillips L. McWilliams (Fed. ID No. 11992)
pmcwilliams@fisherphillips.com
Shahin Vafai (FID No. 7518)
svafai@fisherphillips.com
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone: (803) 255-0000
Facsimile: (803) 255-0202
ATTORNEYS FOR DEFENDANT

August 8, 2025